*Supp. 3 Opinion
FOSTER, J.
Defendant Rose Katherine Diane Tapia was arraigned on a charge of violating Penal Code, section 484, subdivision (a) (petty theft), and trial was set for June 4, 1981. On May 4, 1981, upon defendant’s motion and over the objection of the prosecutor, the court ordered that defendant be “diverted pursuant to section 1001 Penal Code for a period of one year,” upon stated conditions. The People appeal.[1]
The People contend that Penal Code sections 1001 through 1001.11 do not provide a general grant of power to the trial judge, over objection of the prosecutor, to divert a defendant from the criminal justice system, absent a state, county or municipally mandated diversion program.[2] We agree and reverse the order.
Prior to enactment of Penal Code sections 1001 through 1001.11 (Stats. 1977, ch. 574, §§ 2 and 3) as chapter 2.7 of title 6 of part 2 of the Penal Code (herein referred to as Chapter 2.7), there were in existence two statutorily mandated diversion programs. In 1972, the Legislature had enacted sections 1000 through 1000.5 of the Penal Code as chapter 2.5 of the same title.[3] (Chapter 2.5.) Chapter 2.5 authorized pretrial diversion of persons accused of certain drug-related offenses.[4] It established criteria for eligibility (§ 1000, subd. (a), subsecs. (1) through (6)) and procedures to be followed. (Pen. Code, §§ 1000, subd. (b), 1000.1, 1000.2, 1000.3, and 1000.5.)
*Supp. 4 Also in effect were sections 13201, 13201.5 and 13352.5 of the Vehicle Code, authorizing postjudgment avoidance of some of the consequences of a conviction for driving under the influence of alcohol or drugs, when the court has certified to the Department of Motor Vehicles that the defendant has consented to participate in a public or private program for the supervision of alcoholism. (Veh. Code, § 13352.5.)
In People v. Municipal Court (Gelardi) (1978) 84 Cal.App.3d 692 [149 Cal.Rptr. 30], the Court of Appeal reviewed a practice of several judges of the Municipal Court for the Central Judicial District of Marin County. Pursuant to it, judges at a pretrial conference, over the objection of the People, would continue the case for six months or a year and in the interim place defendant on “probation,” with the promise that if he fulfilled the terms of the probation, at the end of the period the case would be dismissed pursuant to Penal Code section 1385. In granting an extraordinary writ to invalidate this practice, the Court of Appeal stated: “Patently, the here discussed practice of the Municipal Court is designed to effectuate a sort of nonstatutory diversion, probation, or rehabilitation procedure prior to the accused’s conviction of crime, by holding out to him the promise of dismissal under Penal Code section 1385 upon his future good behavior. On this subject the state’s Legislature and reviewing courts have spoken.” (84 Cal.App.3d at p. 698.)
The Court of Appeal noted that in People v. Orín (1975) 13 Cal.3d 937 [120 Cal.Rptr. 65, 533 P.2d 193], our Supreme Court had spoken against the use of Penal Code section 1385, to effectuate a plea bargain between defense counsel and the court made over the objections of the People. Quoting from Orín it said: “‘[A]ppellate courts have shown considerable opposition to the granting of dismissals under section 1385 in instances where the People are thereby prevented from prosecuting defendants for offenses of which there is probable cause to believe they are guilty as charged. Courts have recognized that society, represented by the People, has a legitimate interest in “the fair prosecution of crimes properly alleged.” ... ‘[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion. ’ ...”
“‘Permitting trial judges to make liberal use of section 1385 to avoid criminal prosecutions where probable cause exists to believe conviction is warranted would be contrary to the adversary nature of our criminal *Supp. 5 procedure as prescribed by the Legislature. . .. Under the statutory scheme which has been established for the prosecution of crimes, the district attorney is required to “institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses when he has information that such offenses have been committed.” (Gov. Code, § 26501.) The committing magistrate must hold the defendant to answer “if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.” ... Under ordinary circumstances, it would frustrate the orderly and effective operation of our criminal procedure as envisioned by the Legislature if without proper and adequate reason section 1385 were used to terminate the prosecution of defendants for crimes properly charged in accordance with legal procedure.’” (Ibid., at pp. 698-699.)[5]
A second reason given by the Court of Appeal in Gelardi for invalidating the municipal court practice under review was that the lengthy continuance afforded a defendant to implement the judicially created “diversion” practice was directly contrary to the legislative policy stated in Penal Code section 1050. That section states that “... all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time.” and further, “.. . both the people and the defendant have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both the prosecution and the defense, to expedite such proceedings to the greatest degree that is consistent with the ends of justice ....” (84 Cal.App.3d, pp. 699-700.)
As a third reason, the Court of Appeal pointed to the pretrial diversion procedures established by Penal Code section 1000 et seq., as expressing a legislative policy of preempting the field of diversion.
Gelardi was concerned with events occurring prior to the effective date of sections 1001-1001.11 of the Penal Code. The opinion, however, *Supp. 6 contains this dictum: “We observe nothing in the Penal Code’s newly enacted (eff. Sept. 13, 1977) chapter 2.7, sections 1001-1001.11, entitled ‘Diversion,’ which authorizes the above described ‘continuance,’ ‘dismissal,’ and ‘rehabilitation’ procedures. Further, those statutes were not in effect at the time of the criticized orders.” (Pp. 700-701.)
From Gelardi it is clear, therefore, that prior to enactment of Chapter 2.7, trial courts had no authority to institute, over the objection of the prosecution, diversion proceedings, except as permitted by Chapter 2.5 and by sections 13201, 13201.5 and 13352.5 of the Vehicle Code. Defendant maintains, however, that by Chapter 2.7, it was the intention of the Legislature to enact a general diversion statute, available to judges of the municipal court, and applicable to all persons except those specifically excluded under other statutes. She points to a published opinion of the Attorney General as supporting that interpretation. We believe, however, that neither the legislative history, the wording of the sections comprising Chapter 2.7, nor their context with other statutes in pari materia supports that interpretation.
Chapter 2.7 was enacted as an urgency measure for the stated reason: “The status of existing local pretrial diversion programs has been placed in doubt by an Attorney General opinion stating that these programs have no statutory basis for existence and that the Legislature has preempted the subject. Consequently, some programs have had their funding held up and for others the district attorney’s office is hesitant to cooperate with proposed or current programs.” (Stats. 1977, ch. 574, § 3.)
The unpublished opinion to which reference was made was requested with regard to a local diversion program in effect in Sacramento County. Although we have not been provided with details of the program, it appears to have been one sanctioned by the court, the district attorney and the defense bar for certain selected minor offenses. The deputy attorney general who authored the opinion concluded that the program was invalid because the Legislature, in enacting Chapter 2.5 and section 13201 et seq. of the Vehicle Code, had intended to preempt the field of diversion. He based this conclusion upon one of the grounds stated in Gelardi for invalidating the Marin County program. Having found the Sacramento County program invalid on that ground, it was unnecessary for the deputy to consider if it was deficient in any other respect.
*Supp. 7 The intention of the Legislature in enacting Chapter 2.7 is stated in section 1001 of the Penal Code as follows: “It is the intent of the Legislature that neither this chapter, Chapter 2.5 (commencing with Section 1000) of this title, nor any other provision of law be construed to preempt other current or future pretrial or precomplaint diversion programs. It is also the intent of the Legislature that current or future posttrial diversion programs not be preempted, except as provided in Section 13201, 13201.5, or 13352.5 of the Vehicle Code. Sections 1001.2 to 1001.11, inclusive, of this chapter shall apply only to pretrial diversion programs as defined in Section 1001.1 herein.”
In sections 1001.3 through 1001.9 of Chapter 2.7, the Legislature established a series of procedural requirements for eligibility of persons for and their participation in a pretrial diversion program. However, the requirements of the chapter are made specifically inapplicable to “. . . pretrial diversion or posttrial programs for the treatment of problem drinking or alcoholism utilized for persons convicted of one or more offenses under Section 23102 of the Vehicle Code or to pretrial diversion programs established pursuant to Chapter 2.5 (commencing with Section 1000) of this title.” (Pen. Code, § 1001.2.)
Thus, the Legislature has made clear its intention that its previously enacted diversion programs, and any to be enacted in the future, should not be deemed to express a legislative purpose of preempting the field of diversion, that any diversion programs established should meet the criteria set forth in Chapter 2.7, but that those same criteria have no application to existing diversion programs established under the Vehicle Code and by Chapter 2.5.
The wording of the sections contained in Chapter 2.7, however, does not make entirely clear what “current or future pretrial or precomplaint” or “posttrial diversion programs” the Legislature contemplated. Although defendant urges that Chapter 2.7 should be construed as a general grant of power to trial courts in every case to fashion their own diversion programs, nothing in the wording of Chapter 2.7 or its legislative history supports such construction.
Chapter 2.7 includes no express grant of authority to trial courts to divert a defendant from the criminal justice system at any stage of the proceeding. It speaks only in terms of what diversion programs must include. Thus, if it were the intention of the Legislature to empower *Supp. 8 courts to divert defendants, this chapter stands in stark contrast to Chapter 2.5, which is made applicable to specifically enumerated offenses and sets standards for eligibility for diversion (Pen. Code, § 1000), establishes procedures for making application to be diverted (Pen. Code, § 1000.1), establishes procedures for the court and criteria for determining eligibility of an applicant for diversion (Pen. Code, § 1000.2) and sets forth the consequences of compliance and noncompliance with conditions of diversion. (Pen. Code, §§ 1000.3, 1000.5.) If Chapter 2.7 is to be given the construction urged by defendant, the Legislature has given trial judges unlimited power to divert defendants in every criminal proceeding except as provided in Chapter 2.5 and the Vehicle Code, without restriction as to the nature of the crime, be it misdemeanor or felony, or eligibility of a particular defendant, and with no criteria for determining the suitability of the particular defendant for diversion.
The legislative history of Chapter 2.7 provides a much clearer indication of the legislative purpose. The author’s initial summary states that the bill “[p]rovides authorization until January 1, 1980, for cities and counties to establish pretrial (misdemeanor only)[6] and post-trial diversion programs. .. . ” The digest of the bill on its third reading to the Assembly states: “This bill provides general authorization for cities and counties to establish pretrial diversion programs, which comply with specified provisions of this bill, and that state law does not preempt local post trial programs.” A similar statement of purpose appears in the digest of the bill before the Senate Judiciary Committee and the Senate-Assembly Conference Committee, as well as the enrolled bill memorandum to the Governor. In these last three documents appears also the statement that the bill “requires counties or cities which operate diversion programs to make annual reports to the Legislature . . . . ” Such a requirement was included in section 1001.10 when Chapter 2.7 was enacted.[7]
*Supp. 9 We believe it clear, therefore, that Chapter 2.7 is not a general grant of authority to trial courts to grant diversion to a defendant, outside a diversion program mandated by the state or by local government, and over the objection of the prosecuting attorney, but instead is an authorization to local governments to institute diversion programs on an experimental basis.[8]
Further support for this conclusion is provided by legislation enacted subsequent to Chapter 2.7. In 1979, chapter 2.6 of the same title was enacted to permit pretrial diversion of persons accused of acts of domestic violence. (Stats. 1979, ch. 913, § 1.) And in 1980, chapter 2.8 was enacted to provide for diversion in cases involving mentally retarded persons. (Stats. 1980, ch. 1253, § 1.) Both chapters establish strict criteria for eligibility for diversion, specify the diversion procedures to be followed, and the consequences of both completion and failure to complete the diversion programs. Both chapters would be entirely superfluous if the Legislature, by enactment of Chapter 2.7, had intended to provide a general grant of power to trial judges to institute diversion programs on their own initiative, since they would already possess all of the powers provided in chapters 2.6 and 2.8.
In the case before us, there was no diversion program mandated by either the state or by local government, but the trial judge appears to have acted upon his own assumed authority. Lacking such authorized program, in suspending proceedings over the objections of the prosecutor and “diverting” defendant, he acted beyond his jurisdiction.
The order is reversed with directions to the trial judge to reinstate criminal proceedings.
Fainer, P. J., and Jones, J., concurred.

An order granting diversion is analogous to a final judgment in a special proceeding and hence final for the purpose of appellate review. (People v. Wright (1975) 47 Cal.App.3d 490, 492 [120 Cal.Rptr. 899].)

Penal Code section 1001.1 defines “diversion” as “... the procedure of postponing prosecution either temporarily or permanently at any point in the judicial process from the point at which the accused is charged until adjudication.”

Statutes 1972, chapter 1255, section 17.

These are: Health and Safety Code sections 11350 (possession of certain controlled substances); 11357 (possession of marijuana); 11364 (possession of narcotics paraphernalia); 11365 (being present in a room where certain narcotics or controlled substances are being used illegally); 11377 (possession of certain nonnarcotic controlled substances); and 11550 (being under the influence of certain controlled substances) and 11358 (cultivation of marijuana for personal use).
Penal Code sections 381 (possession of toluene or similar substance with intent to inhale or ingest it to produce intoxication) and 647, subdivision (f) (being under the influence of alcohol, a drug or toluene in a public place).
Business and Professions Code section 4230 (possession without a valid prescription of certain controlled substances).

A second basis for invalidating the judicially instituted plea bargain in Orín, which had been made over the objection of the People, was that the procedure did not meet the criteria of a plea bargain, which by its nature contemplated a negotiated disposition between the defendant and the representative of the People. Although judicial approval is necessary to effectuate a plea bargain, “... the court has no authority to substitute itself as the representative of the People in the negotiation process and under the guise of ‘plea bargaining’ to ‘agree’ to a disposition of the case over prosecutorial objection.” (13 Cal.3d at p. 943.)

The limitation to misdemeanors was removed in later versions of the bill.

Section 1001.10 provided in part: “A county or city which operates a diversion program pursuant to this chapter, shall report to the Legislature annually regarding the implementation, administration and operation of such program. Such report shall include but not be limited to the following: the date the program commenced, the program’s general eligibility criteria for divertees, the name of the county or other agency or agencies which established such eligibility criteria, other criteria or standards established for the program, the offense charged against the divertee, the number of individuals referred to the program, ... the reasons for not accepting individuals referred to the program; ...” This section was later repealed. (Stats. 1977, ch. 574, § 2.)

In the enrolled bill memorandum to the Governor it is stated: “The author believes that it is best to allow counties as much flexibility as possible. Since there is very little information available about the value on impact of these programs, it would be best to allow counties to experiment and delay statewide standards until more information has been obtained.”