[No. H003424. Sixth Dist. Oct. 30, 1987.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
YELENA EUGENI SKOBLOV, Real Party in Interest.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Blair W. Hoffman, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Bernard David Walter for Real Party in Interest.

OPINION

AGLIANO, P. J.—The Superior Court of Santa Clara County has issued a writ of mandate directing the municipal court to begin pretrial diversion procedures for a misdemeanor defendant, real party in interest Yelena E. Skoblov. Santa Clara County has not adopted a pretrial diversion program. The People seek a writ of mandate. ■ ■■■ We have concluded the superior court exceeded its jurisdiction in mandating diversion for a

defendant in a county which has no such treatment available, and accordingly the writ will issue.[1]

## RECORD

The People charged Skoblov with one count of misdemeanor petty theft in the Municipal Court of Santa Clara County. (Pen. Code,[2] §§ 484, 488.) She had been arrested for taking a paint brush and two cans of paint. She has no criminal record.

Defendant moved to compel pretrial diversion. After denial in the municipal court, the superior court granted her motion by a writ of mandate compelling the municipal court to schedule a diversion eligibility hearing for Skoblov. The superior court gave these reasons for its order: (1) although section 1001.50, subdivision (a) leaves to the county board of supervisors the choice whether or not to adopt diversion programs, the statutes provide no guidelines to govern the county's choice, and therefore constitute an invalid delegation of legislative power; (2) Skoblov has a fundamental interest at stake, namely, her personal liberty, the People have not demonstrated a compelling governmental interest to justify denial of this right on a geographic basis, and therefore equal protection principles are infringed; (3) although the legislation in question has been validated by two published decisions (*People* v. *Padfield* (1982) 136 Cal.App.3d 218 [185 Cal.Rptr. 903] and *People* v. *Tapia* (1982) 129 Cal App.3d Supp. 1 [181 Cal.Rptr. 382]), these cases are not controlling because *Padfield* does not expressly discuss the constitutional arguments made here and *Tapia,* in addition to being similarly silent on the equal protection and separation of powers arguments, is the decision of an appellate department, and therefore not entitled to weighty consideration.

The court's opinion concludes with the proposition the language of the diversion statutes vests in Skoblov a fundamental right, of which she has been unconstitutionally deprived. Accordingly the municipal court is ordered to provide her a diversion program.

## DISCUSSION

 Two sets of statutes in the Penal Code provide for diversion of misdemeanor defendants. Each constitutes a separate chapter in title 6 (Pleadings and Proceedings Before Trial), part 2 (Criminal Procedure).

---

[1] The trial court's order directing issuance of a writ of mandate compelling the municipal court to grant diversion is not an appealable order under Code of Civil Procedure, section 904.1, subdivision (a)(4). Writ review is appropriate in light of the public significance of the trial court's decision invalidating part of a statutory scheme. (See e.g., *Sledge* v. *Superior Court* (1974) 11 Cal.3d 70, 75-76 [113 Cal.Rptr. 28, 520 P.2d 412], fn. 5.)

[2] All further statutory references are to the Penal Code unless otherwise stated.

Chapter 2.7, entitled "Misdemeanor Diversion," beginning with section 1001, defines pretrial diversion as the procedure of postponing prosecution of a misdemeanor offense at any point from charge to adjudication (§ 1001.1). Chapter 2.7 provides no criteria for acceptability into a diversion program.

Chapter 2.9, beginning with section 1001.50, is entitled "Diversion of Misdemeanor Offenders." This chapter specifies eligibility criteria for misdemeanor diversion.[3] (§ 1001.51.) Chapter 2.9 contains a specific provision that it shall become operative in a county only if the board of supervisors of that county adopts the chapter by ordinance. (§ 1001.50, subd. (a).)

Neither chapter 2.7 nor chapter 2.9 contains any language granting a defendant an express right to be diverted.

Both chapters provide for diversion from the criminal process before trial; supervised participation in rehabilitative programs; and, upon successful completion of such programs, expungement of the entire criminal record, allowing the defendant to represent later that he or she was never arrested or diverted for the charged offense. (§§ 1001.9, 1001.55.) Both require approval of the district attorney for any diversion program. (§§ 1001.2, subd. (b); 1001.50, subd. (b).)

Declarations before the superior court showed that Santa Clara County has instituted no diversion program. Some other counties have such programs. According to the People, such programs are more commonly adopted under chapter 2.7 (which does not specify criteria) rather than chapter 2.9; for example, Contra Costa County has a program adopted under chapter 2.7 with guidelines peculiar to that county. However, the superior court made no findings as to the exact present distribution of chapter 2.7 and chapter 2.9 programs in California counties.

The court's opinion refers only to the provisions of chapter 2.9, and its order likewise refers to that chapter, commanding the municipal court not to deny diversion upon the ground that the board of supervisors has not adopted the provisions of title 6, part 2, chapter 2.9 nor upon the basis that the district attorney has not approved a program under that chapter.

Plainly, the legislative intent in enacting chapter 2.9 was to leave to local option the decision whether or not to establish diversion for misdemeanor

---

[3] Generally, all misdemeanor defendants are eligible except (1) certain Vehicle Code offenders; (2) all defendants for whom a different, specialized diversion program has been established, and (3) persons charged with the more dangerous misdemeanors, such as those involving force and violence or carrying mandatory jail sentences. (See § 1001.51.)

defendants. Section 1001.50, subdivision (a) delegates this authority to the county board of supervisors in so many words; there is no ambiguity. With similar directness the statute requires the district attorney's approval of a program. Nevertheless, the trial court opinion does not discuss whether these requirements may validly be severed from the statutory scheme. If indeed the Legislature may not validly delegate such decisionmaking power, it might conceivably have preferred to dispense with the program altogether. Instead of articulating these problems, the trial court has assumed particular features of the statutes may be removed and the remainder of the chapter enforced, and has indirectly ordered the county board of supervisors, a coordinate governmental branch, to do the very thing the Legislature expressly stated they need not do, namely, establish a diversion program. The startling result is to compel Santa Clara County to provide diversion programs because an indeterminate number of other counties have elected to do so.

■ In our view neither equal protection principles nor any other constitutional mandate require the Legislature to make diversion uniformly available throughout the state. In addition to the Court of Appeal's express validation of the chapter 2.7 program, despite the presence of prosecutorial veto (*People* v. *Padfield, supra,* 136 Cal.App.3d 218), another decision has fully and cogently explained why geographical uniformity is not required in these cases, namely, Justice Kaus's analysis in *People* v. *McNaught* (1973) 31 Cal.App.3d 599 [107 Cal.Rptr. 566].

The *McNaught* decision considered section 647, subdivisions (f) and (ff), which, together with Welfare and Institutions Code section 5176, provide, at county option, a program for diversion of inebriates to civil detoxification facilities. The decision squarely holds the Legislature may delegate to county discretion the decision whether to make such facilities available; it is rational to allow local authorities who, presumably, are most familiar with local conditions to weigh the relevant factors and decide whether or not to provide such treatment.

First, the decision points out a defendant cannot rest an equal protection argument solely on lack of territorial uniformity without "fighting at least two United States Supreme Court decisions," (*Id.* at p. 603), namely *Salsburg* v. *Maryland* (1954) 346 U.S. 545 [98 L.Ed. 281, 74 S.Ct. 280] and *McGowan* v. *Maryland* (1961) 366 U.S. 420, 427 [6 L.Ed.2d 393, 399-400, 81 S.Ct. 1101].) Conversely, a state cannot "classify and discriminate as it pleases, as long as it does so on a territorial basis." (*McNaught, supra,* at p. 604, fn. omitted.) ■ Rather, the question is whether local variation is either rationally justified (if we do not deal with a fundamental interest) or justified by a compelling governmental interest (where the interest is funda-

mental). In accord is the California Supreme Court: "Legislative classification as to treatment and procedure within a state judicial system according to factors such as geographical area, population, or other relevant considerations, does not deny equal protection of the laws unless such classification is shown to be palpably arbitrary and without a sound basis in reason." (*Whittaker* v. *Superior Court* (1968) 68 Cal.2d 357, 370 [66 Cal.Rptr. 710, 438 P.2d 358]; see also *McGlothlen* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 1005, 1021 [140 Cal.Rptr. 168], and decisions cited therein.)

Because the *McNaught* decision analyzes the problem using the test of rational basis, the decision necessarily implies that the right involved was not fundamental. Although a different statutory scheme was involved, it is similar in purpose and effect to that here. Both accomplish diversion from the criminal system at an early stage of the proceedings; both are aimed at relatively harmless misdemeanants; both result in no criminal sanctions being ultimately imposed upon fulfillment of stated conditions. Both belong to the extended family of legislative experiments with various rehabilitative or other treatment-oriented alternatives to deal with relatively nondangerous defendants, intended to lessen the burden on courts and jails and to benefit particular defendants. Given the similarities between the diversion options in *McNaught* and here, we perceive no justification for concluding there is a fundamental right to diversion under chapters 2.7 and 2.9, but not under section 647, subdivision (ff). It follows, then, that if we agree with *McNaught,* we deal with a nonfundamental right. (To similar effect see *People* v. *Padfield, supra* 136 Cal.App.3d 218 [no right to diversion under chapter 2.7]; *Marshall* v. *United States* (1974) 414 U.S. 417, 421-422 [38 L.Ed.2d 618, 623, 94 S.Ct. 700] (rehabilitative treatment not a fundamental right]; *People* v. *Koester* (1975) 53 Cal.App.3d 631, 642-643 [126 Cal.Rptr. 73], *Department of Motor Vehicles* v. *Superior Court* (1976) 58 Cal.App.3d 936 [130 Cal.Rptr. 311] [alcoholic rehabilitation treatment not a fundamental right], accord, *McGlothlen* v. *Department of Motor Vehicles, supra,* 71 Cal.App.3d 1005, 1021; *State* ex rel. *Anderson* v. *Haas* (1979) 43 Ore.App. 169 [602 P.2d 346]; *State* v. *Graves* (1982), 58 Ore.App. 286 [648 P.2d 866]; *Com.* v. *Kindness* (1977) 247 Pa.Super. 99 [371 A.2d 1346]; *State* v. *Greenlee* (1980) 228 Kan. 712 [620 P.2d 1132].)

*People* v. *Ryser* (1974) 40 Cal.App.3d 1, 6 [114 Cal.Rptr. 668] articulates a fundamental interest in having a conviction sealed under section 1203.45, referring to the statutory purpose of not shackling defendant to a "lifetime in the rogue's gallery." (*Id.* at p. 7.) Real party argues that pretrial diversion, like sealing, has the potential to expunge the entire criminal proceeding from defendant's record. A difference between diversion and sealing is the person qualifying under section 1203.45 is immediately entitled to sealing, whereas the person being diverted will only qualify for later expunge-

ment if he/she successfully completes the program. This lessens the initial probability that the diversion candidate may be entitled to be removed from the rogue's gallery. *Ryser* nevertheless, fairly read, does hold that the interest in being purged of criminal stigma is fundamental.

However, all the other precedent, cited *ante,* dealing with diversion or other forms of rehabilitative treatment, finds these programs are not available as a matter of fundamental right.

We conclude that in light of the differences between sealing a conviction under limited circumstances, and offering treatment alternatives to an accused which may result in ultimate exoneration, *Ryser* is not controlling here, and we hold, in accordance with the weight of authority, that there is no fundamental right to diversion.

■ *McNaught* examines the intent of the Legislature there "that the existence of [detoxification centers] should not be forced on counties, but that it should be up to the responsible local authorities to determine whether local conditions call for [their] establishment and maintenance. (*People* v. *McNaught, supra,* 31 Cal.App.3d at p. 607.) The Court of Appeal found such delegation to local option eminently reasonable. "The local factors which the local advisory board and the board of supervisors may legitimately take into consideration in deciding whether to operate a center are so diverse, that they defy enumeration." (*Ibid.*) The court does, however, in a footnote, proceed to enumerate 10 different categories of data which might rationally influence a local decision to establish, or not establish, a detoxification center. Such factors include socioeconomic and demographic data, local law enforcement conditions, health factors, existing local services, and availability of resources. The same factors apply to the legislative choice here to leave the choice of misdemeanor diversion to local option; here, as in *McNaught,* such delegation is not palpably arbitrary and discriminatory, but instead is readily justified by rational analysis.

Real party admits that the decision in *Salsburg* v. *Maryland, supra,* 346 U.S. 545, permits, as a matter of federal constitutional law, local variation in criminal procedures, but contends California interprets the equal protection clause more expansively, citing *Serrano* v. *Priest* (1971) 5 Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]. The *Serrano* decision, mandating uniform statewide funding of public schools, said where suspect classifications are at stake the equal protection clause curtails legislative prerogative to permit geographic variation. Here, however, as stated, we do not deal with suspect classifications or fundamental interests, but rather with a treatment alternative which, according to *McNaught,* may rationally be left to local implementation.

*State* v. *Kowitski* (1976) 145 N.J.Super. 37 [367 A.2d 459] found an equal protection violation where pretrial interruption programs were unavailable in all counties. The court said geographical distinctions were wholly unrelated to the rehabilitative object of the program. To date this case appears not to have been cited, except in an annotation. (Annot. (1981) 4 A.L.R. 4th 147, 151.) We perceive an analytic flaw in its exclusive focus on the absence of relationship between geographical variation and the rehabilitative objects of the program. Although these factors may be unrelated, the Legislature may nevertheless have had rational reasons for making the program available at local option; *McNaught, supra,* sets out many such possible reasons. So long as there is some reasonable basis for the statute, it does not offend the equal protection clause.

Further, *State* v. *Senno* (1979) 79 N.J. 216 [398 A.2d 873], citing *McNaught,* says territorial uniformity is not a constitutional requisite for setting up diversion programs; such distinctions are permissible when rational. This decision appears to have silently overruled *State* v. *Kowitski, supra. Senno* also agrees with *McNaught* that there is no fundamental right to diversion.

It has been observed that the Legislature may proceed to provide benefits on a step-by-step basis and need not provide, for all possible beneficiaries, the benefits offered to a particular group. (*McDonald* v. *Board of Election* (1969) 394 U.S. 802, 810-811 [22 L.Ed.2d 739, 746-747, 89 S.Ct. 1404]; *Semler* v. *Dental Examiners* (1935) 294 U.S. 608, 610 [79 L.Ed. 1086, 1088-1089, 55 S.Ct. 570]; *Saal* v. *Workmen's Comp. Appeals Bd.* (1975) 50 Cal.App.3d 291, 300 [123 Cal.Rptr. 506].) It has also been noted that if such a partial conferring of benefit were a denial of equal protection, the necessary result could be not to extend the benefit to all but to remove it from those to whom it was given. (*McNaught, supra,* 31 Cal.App.3d at p. 609.) Also, as observed in *McNaught,* a decision in defendant's favor could result in the release of all diversion-eligible misdemeanor arrestees in Santa Clara County (absent provision for diversion). The Legislature might well react to such a holding by repealing the entire program. Such a route is surely to be avoided when possible.

In its memorandum decision, the trial court here distinguished cases such as *McGlothen, supra,* 71 Cal.App.3d 1005, which have not required geographic uniformity in the availability of rehabilitative treatment programs, because some of those decisions involved experimental programs containing so-called statutory "sunset clauses" terminating the experiment by a stated date. However, the detoxification program considered in *McNaught* contains no such self-termination and is still on the books. Nor does the constitutional analysis in *McNaught* and in the other cases we have cited in any

way depend on the involved program being experimental or short term. The issue, as we have stated, depends on whether geographic variation is reasonably justifiable. The weight of authority bearing on the problem, as well as rational analysis, suggests it is.

■ The United States Supreme Court has emphasized the extensive power of a state legislature to delegate power to local agencies. "This Court has often recognized that political subdivisions such as cities and counties are created by the State 'as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them.'" (*Holt Civic Club* v. *Tuscaloosa* (1978) 439 U.S. 60, 71 [58 L.Ed.2d 292, 302, 99 S.Ct. 383], quoting from *Hunter* v. *Pittsburgh* (1907) 207 U.S. 161, 178 [52 L.Ed. 151, 159, 28 S.Ct. 40].) The *Holt* decision emphasizes "the extraordinarily wide latitude that States have in creating various types of political subdivisions and conferring authority upon them." (*Ibid.,* fn. omitted [58 L.Ed.2d at p. 303].) Given this power, as well as the decisions in *Padfield, supra,* 136 Cal.App.3d 218 and in *McNaught, supra,* 31 Cal.App.3d 599, it can hardly be maintained that the California Legislature does not have the power to delegate to the counties the choice whether or not to implement misdemeanor diversion. Without making value judgments, we point out only that at least equally significant choices in a wide variety of areas are left to local option including matters of land use, roads, water distribution, schools, and countless other matters of public concern.

The cases cited by the trial court regarding uncontrolled delegation of legislative power are not in point: they involve delegation of legislative power to administrative agencies controlled by the executive branch, rather than sharing of legislative power between a state and county; none involve local option to institute a rehabilitative program; most involve ratemaking; and the very secondary source cited by the trial court, which collects these cases, notes that the rule against delegation of power "has yielded to the growing necessity for delegation to boards and officers of a large measure of discretionary power which is ordinarily considered legislative in character." (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 91, p. 3326.) The delegation doctrine relied on below has no application to this case.

We conclude the statutes do not violate equal protection of the laws.

■ The decisions have generally rejected the challenge to a diversion program that it violates separation of powers because the prosecutor is given veto power over the program. (He may not, however, be given a veto power exercisable individually as to a particular defendant, as the statute, denying this power, recognizes. See *Sledge* v. *Superior Court* (1974) 11

Cal.3d 70 [113 Cal.Rptr. 28, 520 P.2d 412]; *People* v. *Superior Court* (*On Tai Ho*) (1974) 11 Cal.3d 59, 68 [113 Cal.Rptr. 21, 520 P.2d 405].) It has been noted that giving the district attorney control over the institution of a diversion program gives him nothing more than a power of diversion he has always had: "Prosecutors have long employed diversion on an informal, individual basis by deferring prosecution if, for example, the accused entered the military or agreed to undergo rehabilitative treatment." (Annot., *supra,* 4 A.L.R.4th 147, 151.) The decision in *State* v. *Greenlee, supra,* rejects the separation of powers challenge on that basis; looking to the nature of the power exercised, it is not inherently judicial because "the prosecutor has always had broad power of discretion in matters of determining whether to prosecute an action. The statute [diversion] does not enlarge that inherent power nor does it destroy or unreasonably restrict it." (*State* v. *Greenlee, supra,* 620 P.2d at p. 1137; the decision also rejects a challenge that diversion unreasonably invades the executive power of the prosecutor.) Also, the California diversion statutes have been treated as valid in two decisions, cited *ante* (*People* v. *Padfield, supra,* 136 Cal.App. 3d 218 and *People* v. *Tapia, supra,* 129 Cal.App.3d Supp. 1); although neither expressly discusses the separation of powers argument, and are not binding precedent on the point, they nevertheless do lend some presumptive credence to the statutes' validity. After all, the requirement of the district attorney's approval is a fairly obvious feature of both sets of diversion statutes, so that a decision, as *Padfield, supra,* generally concerned with the validity of the statutory scheme, would in the likely course of events have at least glancingly considered that facet of the scheme.

Real party has argued in these proceedings that only the disapproval of the district attorney prevents implementation of diversion in Santa Clara County. However, as discussed above, the statutes, at least under chapter 2.9, also require the approval of the county board of supervisors. Even if we were to agree with real party that requiring the district attorney's approval were invalid, nevertheless the trial court would have exceeded its jurisdiction in ordering, as it did, diversion under chapter 2.9 without regard to the supervisors' approval. The superior court has mandated diversion only under chapter 2.9. Accordingly, strictly speaking, our observations regarding the required approval of the prosecutor are dicta, for even without that provision, the statutes still would not authorize the diversion ordered here.

We conclude there is no right to diversion under chapter 2.7 or 2.9; Santa Clara County has no program for such diversion; accordingly defendant has no right to be diverted and the trial court had no jurisdiction to mandate that relief. We will therefore issue our writ to reinstate this proceeding on a legal basis. In doing so, we note there are other options

available to deal with a sympathetic first offender as defendant appears to be, including probation, and ultimate dismissal. (§ 1203.4.)

Real party in interest has been notified that a peremptory writ in the first instance could be issued here, and she has filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue as prayed, directing the respondent superior court to vacate its order issuing a writ of mandate and instead to make a different order denying defendant's motion for diversion.

Capaccioli, J., and Premo, J.,* concurred.

The petition of real party in interest for review by the Supreme Court was denied February 18, 1988.

---

* Assigned by the Chairperson of the Judicial Council.