Filed 1/23/15

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JUANITA VIDANA,<br><br>    Defendant and Appellant. | G050399<br><br>(Super. Ct. No. RIF1105527)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Edward D. Webster, Judge. Affirmed as modified.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]        Pursuant to California Rules of Court, rule 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II, III and IV of the discussion section.

A jury found defendant Juanita Vidana guilty of one count of grand theft by larceny (Pen. Code, § 487, subd. (a))[1] and one count of grand theft by embezzlement (§ 503). The trial court suspended imposition of sentence and granted defendant 36 months of formal probation. She was ordered to serve 240 days in jail: 30 straight days, and the remainder to be served on weekends. In addition to the usual fines and fees, defendant was ordered to pay $58,273.02 in victim restitution. (§ 1203.1, subd. (a)(3).)

Defendant raises four issues on appeal. First, she contends the two counts, larceny and embezzlement, are not separate offenses, but two ways of committing a single offense: theft. Second, she contends substantial evidence does not support the verdict. Third, she contends the court abused its discretion in denying her motion to reduce the charges to misdemeanors (§ 17, subd. (b)). Fourth, she contends the court abused its discretion in setting the amount of restitution at $58,273.02. In the published portion of this opinion, we agree with her first contention and strike her conviction under count 2 (grand theft). In the unpublished portion of this opinion, we reject her remaining contentions and affirm the remainder of the judgment.

FACTS

Defendant worked for Robertson's Ready Mix (Robertson's), a company that sells concrete, from 2005 to 2011 as a credit agent. Her duties included ensuring invoices were paid, and providing a material release once an account was paid (most of Robertson's customers would not have to pay for the concrete until the customer was paid on the particular job). Robertson's recourse if it did not get paid was to file a lien. The credit agents were responsible for tracking the relevant time periods to ensure that, if

---

[1] All statutory references are to the Penal Code unless otherwise stated.

2

necessary, a lien was timely filed. Each credit agent was assigned particular customers, up to as many as 400.

When a customer came into Robertson's to pay an invoice with cash, the customer would tender payment to the assigned credit agent. The credit agent would then write a receipt for the customer. Next, the credit agent would write the customer number and amount of cash on an envelope, put the cash in the envelope, and take the cash to either Teri Bernstein or Megan Levato. If neither of them were available, the cash would go to a backup employee, Rosa. Bernstein or Levato would then count the cash and double check that the amount written on the envelope was accurate. Once the amount was verified, Levato would lock the money in her desk to be deposited in the bank. If the money came in too late to be deposited that day, Levato would put it into a safe. If Levato were not there, the money could be given to Kaye Bennett (defendant's supervisor), the president of the company, or the operations manager, all of whom knew the combination to the safe. After the money was received and verified, Levato would instruct another employee to update the company's computer database with the amounts received from that particular customer. The credit agent assigned to that particular customer would then access the customer's account within the database and apply the money received to the appropriate invoice.

Every one to two weeks, each credit agent was required to pull up an aging report, which showed unpaid invoices, to ensure his or her customers were making timely payments. This was essential to ensure liens were timely filed. If unpaid invoices were approaching the deadline to file a lien, the credit agent's job was to call the customer to inquire about receiving payment.

In June 2011 defendant went on maternity leave and another credit agent, Tina Hawkins, took over defendant's customer account for Longhorn Pumping. Hawkins immediately noticed that the account was delinquent. Hawkins called Longhorn Pumping to inquire about the delinquency. She informed the owner of Longhorn Pumping that his account was being placed on hold until the payment was made. The owner disagreed, insisting he had paid cash the day before. He brought in his receipts to prove that he had paid. The receipts were consistent with defendant's handwriting. But there was no record of the money received in the database. Bennett spoke with defendant on the phone and asked her about the customer's payment. Defendant stated she had given the cash to either Bernstein or Levato, pursuant to company policy.

This incident prompted Bennett to review other receipts in defendant's receipt book. She discovered a total of $58,273.02 in cash payments reflected on defendant's receipts that were missing from the database. The receipts with missing cash entries span from June 2010 to May 2011 and involve 12 different customers. In some instances, the entirety of the cash payment reflected on a particular receipt is missing from the database. In other instances, the database reflected only part of a cash payment reflected on defendant's receipt. With respect to those instances, at trial the People presented four envelopes submitted by defendant on which she wrote an amount less than what was reflected on the corresponding receipt she had issued. The total amount missing from those four envelopes was $10,976.00.

Bennett testified that, based on how Robertson's system works, "a credit agent in defendant's position [would] know that money is missing," and that it would be impossible for a credit agent to be unaware because the unpaid invoice would show up on the agent's aging report, which the agent must check regularly. Indeed, defendant, who testified, admitted she checked to see if payments had posted approximately once per week. Over the period of the missing cash entries, however, defendant never approached Bennett about any missing cash payments.

4

Defendant denied taking any money. She could not explain what happened to the missing money other than that it may have been applied to the wrong account. She also testified, however, that she checked her aging reports on a weekly basis. She testified that an accurate aging report was important to her. She also could not explain the envelopes that had cash amounts less than what was reflected on the receipt.

DISCUSSION

*I. Defendant was Improperly Convicted of Both Larceny and Embezzlement*

First, defendant contends that she could not have been convicted of both larceny and embezzlement because they are not separate offenses; they are two ways of committing theft. We agree.

Our high court recently described the historical underpinnings of the various types of theft in *People v. Williams* (2013) 57 Cal.4th 776 (*Williams*), from which we quote at length:

"Britain's 18th-century division of theft into the three separate crimes of larceny, false pretenses, and embezzlement made its way into the early criminal laws of the American states. That import has been widely criticized in this nation's legal community because of the seemingly arbitrary distinctions between the three offenses and the burden these distinctions have posed for prosecutors. [Citations.] [¶] For instance, it was difficult at times to determine whether a defendant had acquired title to the property, or merely possession, a distinction separating theft by false pretenses from larceny by trick. [Citations.] It was similarly difficult at times to determine whether a defendant, clearly guilty of some theft offense, had committed embezzlement or larceny . . . ." (*Williams*, *supra*, 57 Cal.4th at pp. 784-785.)

"In the early 20th century, many state legislatures, recognizing the burdens imposed on prosecutors by the separation of the three crimes of larceny, false pretenses,

5

and embezzlement, consolidated those offenses into *a single crime*, usually called 'theft.' [Citations.] The California Legislature did so in 1927, by statutory amendment. [Citations.] In a 1954 decision, this court explained: 'The purpose of the consolidation was to remove the technicalities that existed in the pleading and proof of these crimes at common law. Indictments and informations charging the crime of 'theft' can now simply allege an "unlawful taking." [Citation.] Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an "unlawful taking" has been proved.'" (*Williams, supra*, 57 Cal.4th at pp. 785-786, fn. omitted, italic added; § 484, subd. (a) as amended by Stats. 1927, ch. 619, § 1, p. 1046.)

Section 484, subdivision (a), currently states: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another [i.e., larceny], or who shall fraudulently appropriate property which has been entrusted to him or her [i.e., embezzlement], or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property [i.e. false pretenses], is guilty of theft."

"'In an effort to further clarify its intent to bring all of the theft crimes under one umbrella,' section 490a was also enacted in 1927 . . . ." (*People v. Nazary* (2010) 191 Cal.App.4th 727, 740 (*Nazary*).) Section 490a provides, "Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor."

"When the formerly distinct offenses of larceny, embezzlement, and obtaining property by false pretenses were consolidated in 1927 into the *single crime of 'theft' defined by . . . section 484*, most of the procedural distinctions between those offenses were abolished. But their substantive distinctions were not: 'The elements of the several types of theft included within section 484 have not been changed, however,

6

and a judgment of conviction of theft, based on a general verdict of guilty, can be sustained only if the evidence discloses the elements of one of the consolidated offenses.'" (*People v. Davis* (1998) 19 Cal.4th 301, 304-305, italics added.)

Defendant contends that this statutory history demonstrates that the different theft offenses have been merged into a single offense, and thus she could not be convicted of both larceny and embezzlement. This exact argument was made in *Nazary*, and the court rejected it, concluding the argument was "meritless because the elements of embezzlement and grand theft by an employee, and the distinction between them, continue to exist." (*Nazary*, *supra*, 191 Cal.App.4th at p. 741.)

Defendant contends *Nazary* was wrongly decided and instead relies on *People v. Fenderson* (2010) 188 Cal.App.4th 625 (*Fenderson*). In *Fenderson* the defendant was convicted of larceny for taking money belonging to the estate of a decedent for whom the defendant had been the caretaker. (*Id*. at p. 628.) The defendant argued the evidence showed, at most, embezzlement, but that the jury was only instructed on larceny. (*Id.*at pp. 635-637.) Although the court affirmed the larceny conviction, it held, in the alternative, that the conviction could also be sustained under a theory of embezzlement, even though the jury was never instructed on embezzlement. (*Id.* at p. 637.) The court noted a conflict in the appellate courts regarding whether a theft conviction may be upheld on a theory not presented to the jury. (*Id.* at pp. 640-641.) Nonetheless, the court held it was appropriate because, as it viewed the two, theft by larceny was an "'increased . . . evidentiary burden'" (*id*. at p. 641) over embezzlement, and since the People proved larceny, it would make little sense to require a jury to pass on embezzlement. The court also reasoned that "'[i]t would obviously be very hard to explain why a theft conviction should be reversed on the grounds that the evidence showed the defendant was indeed guilty of theft, but would have been guilty of a differently denominated type of theft under a common law system which has been repealed by statute.'" (*Id.* at pp. 641-642.)

7

The issue confronted by the *Fenderson* court however, is not before us. Here, the jury was instructed on both larceny and embezzlement.

Instead, we must decide whether larceny and embezzlement are different offenses, or merely different ways of committing the single offense of theft. On that issue, we are guided by our high court's recent decision in *People v. Gonzalez* (2014) 60 Cal.4th 533 (*Gonzalez*). There, the court was confronted with the question of "whether a defendant may, consistently with . . . section 954, be convicted of both oral copulation of an unconscious person [citation] and oral copulation of an intoxicated person [citation] based on the same act." (*Id.* at p. 535, fn. omitted.)[2] The court began its analysis by observing, "We have repeatedly held that the same act can support multiple charges and multiple convictions. 'Unless one offense is necessarily included in the other [citation], multiple convictions can be based upon a single criminal act or an indivisible course of criminal conduct (§ 954).'" (*Gonzalez*, at p. 537.) The court treated the issue as one of statutory interpretation: "[T]he determination whether subdivisions (f) and (i) of section 288a define different offenses or merely describe different ways of committing the same offense properly turns on the Legislature's intent in enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two." (*Ibid.*)

---

[2] Section 954 states, "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court; provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. An acquittal of one or more counts shall not be deemed an acquittal of any other count."

Although oral copulation of an unconscious person and oral copulation of an intoxicated person are reflected in subdivisions of a single statute, the court held they are separate offenses. It reasoned, "Section 288a is textually and structurally different from former section 261 [i.e., rape]. Subdivision (a) of section 288a defines what conduct constitutes the act of oral copulation. Thereafter, subdivisions (b) through (k) define various ways the act may be criminal. Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment. Not all of these punishments are the same. That each subdivision of section 288a was drafted to be self-contained supports the view that each describes an independent offense, and therefore section 954 is no impediment to a defendant's conviction under more than one such subdivision for a single act." (*Gonzalez*, *supra*, 60 Cal.4th at p. 539.)

Following the lead of *Gonzalez*, we view the issue before us as one of statutory interpretation. However, we confront a much different statutory scheme to that addressed in *Gonzalez*. Here, we have two explicit legislative pronouncements. Section 484 defines "tak[ing] away the personal property of another" (i.e., larceny) and "fraudulently appropriat[ing] property which has been entrusted" (i.e., embezzlement) as "theft." Section 490a eliminates any remaining uncertainty by literally excising the words "larceny" and "embezzlement" from the legislative dictionary: "Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor." (*Ibid.*) Taken at face value, these legislative amendments plainly eliminated the distinctions between the various theft offenses. This interpretation is not only the plain reading, but is consistent with the contemporaneous criticisms of the concept of having three separate offenses, all of which seek to punish unlawful takings of money or personal property. (See *Williams, supra*, 57 Cal.4th at pp. 784-785 [collecting the contemporaneous criticisms of various commentators].)

9

Despite these legislative pronouncements, *Nazary* held larceny and embezzlement to be separate offenses on the sole ground that they require different elements. In our view, that is insufficient because an offense that can be committed in multiple ways will naturally have varying elements. For example the crime of rape. Section 261, subdivision (a), defines rape as follows: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances . . . ." The statute then lists several quite different ways of committing rape; for example, where, by reason of a mental disorder, the victim is incapable of giving consent; by force, violence, duress, menace, or fear; against an intoxicated person; against an unconscious person; etc. (*Id.*, subds. (a)(1)-(a)(7).) Each of these subdivisions plainly involves different elements, and if that were the only test, they should be different crimes. However, they are not, they are all merely different ways of committing a single offense of rape. (*People v. Collins* (1960) 54 Cal.2d 57, 59 superseded by statute on other grounds in *People v. Lohbauer* (1981) 29 Cal.3d 364, 372 ["The subdivisions of section 261 do not state different offenses but merely define the different circumstances under which an act of intercourse constitutes the crime of rape"].) The same can be said of forgery, which likewise sets forth multiple ways of committing the offense (i.e. misrepresenting a name, falsifying a will, forging a seal or signature, etc.). (§ 470.) Yet "the commission of any one or more of the acts enumerated in section 470, in reference to the same instrument, constitutes but one offense of forgery . . . ." (*People v. Ryan* (2006) 138 Cal.App.4th 360, 371.)

Statutory construction cannot consist in merely counting elements. Given the explicit statutory pronouncements combining the various types of theft into a single offense, the mere fact that the different theories of theft entail different elements is not controlling. Rather, we must give effect to the Legislature's explicit intent. The potential countervailing statutory considerations are that embezzlement is defined in a separate statute (§ 503), and where the embezzlement is of government funds, the punishment is

10

harsher (otherwise the punishment is the same as theft) (§ 514). Section 503, however, predates the 1927 amendments. And the fact that embezzlement carries a harsher punishment in a very specific situation is not sufficiently indicative of the Legislature's intent as to overcome the otherwise explicit indications of its intent embodied in sections 484 and 490a. Accordingly, we conclude larceny and embezzlement are merely two ways of committing the single offense of theft. Therefore, we will strike defendant's conviction under count 2 for grand theft (larceny).[3]

## II. *Substantial Evidence Supports the Verdict*

Next, defendant contends the verdict is not supported by substantial evidence. We disagree.

"To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) "An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "'A reasonable inference, however, "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from

---

[3] We note that, were the events of this case to repeat themselves today, after our high court's decision in *People v. Whitmer* (2014) 59 Cal.4th 733, the prosecutor could charge each of defendant's takings as a separate theft offense. (*Id.* at p. 741.) The rule announced in *Whitmer*, however, does not apply retroactively. (*Id.* at p. 742.) And since the events of this case pre-date *Whitmer*, defendant's actions would likely be interpreted as a single plan or scheme giving rise to only a single court of theft (*Id.* at p. 739.), which is how the prosecutor charged and tried this case.

11

evidence rather than . . . a mere speculation as to probabilities without evidence."'" (*People v. Raley* (1992) 2 Cal.4th 870, 891.)

"The elements of theft by larceny are well settled: the offense is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away." (*People v. Davis*, *supra*, 19 Cal.4th at p. 305.)

"The elements of embezzlement are '1. An owner entrusted his/her property to the defendant; 2. The owner did so because he/she trusted the defendant; 3. The defendant fraudulently converted that property for his/her own benefit; [and] 4. When the defendant converted the property, he/she intended to deprive the owner of its use.'" (*Fenderson*, *supra*, 188 Cal.App.4th at p. 636.) Both the larceny and embezzlement counts were tried as grand theft, and thus the amount stolen had to exceed $950. (§ 487, subd. (a).)

The focus of defendant's argument, which applies to both counts, is that there was no substantial evidence that she took any money from Robertson's. Defendant notes there were multiple people at Robertson's who could have handled the cash she received. Although company policy was that Bernstein and Levato would take the money from credit agents, in their absence, as many as three other people could fill that role. Defendant claims any of those individuals could have stolen the money. Additionally, credit agents would often cover for one another if someone was out of the office. Defendant also notes that for the year she was accused of stealing money, none of her customers had complained that payments were missing from their statements.

None of this evidence undercuts the judgment. The receipts issued to the customers at issue were from defendant's receipt book. Perhaps the most damning evidence at trial was the four envelopes on which defendant wrote cash amounts that were less than the corresponding amount she had written on the receipt. Defendant was the only one to handle the cash received from the customer and to place it in the envelope

12

with the amount written on the outside, and thus she was the only one who could have taken the difference. Defendant's only response was that the prosecution failed to call a handwriting expert as a witness to prove the writing on the envelope was hers. But no expert was needed. (Evid. Code, §§ 1416 ["A witness who is not otherwise qualified to testify as an expert may state his opinion whether a writing is in the handwriting of a supposed writer if the court finds that he has personal knowledge of the handwriting of the supposed writer"], 1417 ["The genuineness of handwriting, or the lack thereof, may be proved by a comparison made by the trier of fact with handwriting (a) which the court finds was admitted or treated as genuine by the party against whom the evidence is offered or (b) otherwise proved to be genuine to the satisfaction of the court"].) Bennett testified that the handwriting on the envelopes was defendant's handwriting. Bennett had worked with defendant for six years. And the jury was free to compare the handwriting to uncontested examples of defendant's handwriting, from, for example, defendant's receipt book, to make its own determination. Moreover, with respect to one of the envelopes in question, defendant admitted it was her handwriting on it.

The envelopes are evidence that defendant stole at least $10,976.00 — an amount that easily exceeds the $950 threshold for grand theft. Accordingly, this evidence alone supports the verdict.

### III. *Refusing to Reduce the Charges to Misdemeanors Was Not an Abuse of Discretion*

Next defendant contends the court abused its discretion by refusing to reduce the theft offenses to misdemeanors. "Under the governing statutes, grand theft is a so-called 'wobbler' — i.e., an offense which may be charged and punished as either a felony or a misdemeanor [citation] . . . ." (*Davis v. Municipal Court* (1988) 46 Cal.3d 64, 70.) Here the district attorney charged the grand theft count as a felony. At the sentencing hearing, defendant brought an oral motion under section 17, subdivision (b), to reduce the offenses to misdemeanors. The court denied the motion, stating, "There are

13

at least 24 separate acts of theft, some in the amount of over $6,000. When you take advantage of a position of trust, I think it would be an abuse of discretion to reduce the matter to a misdemeanor. This is not misdemeanor conduct, so I'd deny that request."

Whether to reduce a charge to a misdemeanor under section 17, subdivision (b), "rests . . . solely 'in the discretion of the court.'" (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.) The factors the court should consider include "'"the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citations.] When appropriate, judges should also consider the general objectives of sentencing such as those set forth in California Rules of Court, rule 410. The corollary is that even under the broad authority conferred by section 17(b), a determination made outside the perimeters drawn by individualized consideration of the offense, the offender, and the public interest 'exceeds the bounds of reason.'" (*Id.* at p. 978, fn. omitted.)[4] Our high court described this as an "extremely deferential and restrained standard by which appellate courts are bound . . . ." (*Id.* at p. 981.)

Defendant does not contend the court acted capriciously, but instead contends the general objectives of sentencing set forth in California Rules of Court, rule 4.410 counsel a different result. Those objectives include, "(1) Protecting society; [¶] (2) Punishing the defendant; [¶] (3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses; [¶] (4) Deterring others from criminal conduct by demonstrating its consequences; [¶] (5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration; [¶] (6) Securing restitution for the victims of crime; and [¶] (7) Achieving uniformity in sentencing." Defendant notes that she has no prior criminal record, has a family to support, would suffer a similar punishment if reduced to a misdemeanor, and that it

---

[4]     Those standards are now set forth in California Rules of Court, rule 4.410.

14

would be easier for defendant to pay the restitution if her crime were a misdemeanor because it would be easier to get a job.

This all may be true, and potentially it would have been within the court's discretion to reduce the charges, but defendant has not suggested any consideration upon which we could conclude the court abused its discretion. The court determined that based on the severity of the crime, the number of incidents, and the duration of the conduct, a felony charge was appropriate. These were proper considerations for the court to weigh. We find no abuse of discretion.

*IV. The Restitution Order Was Not an Abuse of Discretion*

Next defendant claims the court abused its discretion by awarding $58,273.02 in victim restitution. Defendant contends the evidence supports a restitution award of at most $10,976.00 — the amount missing from the envelopes with partial payments. We disagree.[5]

"Victim restitution is mandated by the California Constitution, which provides in relevant part that '[r]estitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary.'" (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1225 [citing Cal. Const., art. I, § 28, subd. (b)].) "The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record." (§ 1202.4, subd. (f).) "[T]he trial court has really very little discretion under section 1202.4 in this regard. The statute requires the award be set in an amount which will fully reimburse the victim

---

[5] Defendant did not object to the amount of restitution at trial. The People contend this resulted in a forfeiture of the issue. Defendant argues it was ineffective assistance of counsel. In the interests of efficiency, we bypass the forfeiture question and address the merits.

15

for his or her losses unless there are clear and compelling reasons not to do so." (*People v. Rowland* (1997) 51 Cal.App.4th 1745, 1754.)

Although there was no direct evidence at trial that defendant took the entire $58,273.02, there was circumstantial evidence. To begin with, defendant wrote receipts for the entire $58,273.02, none of which ended up in the Robertson's database. With the exception of the $10,976.00 on the envelopes, defendant contends there are multiple people who could have taken the money. While that is true in theory, defendant's argument is belied by Bennett's testimony that if someone else had taken that money, defendant, as the credit agent for those customers, would have noticed delinquencies on the aging report. This testimony is corroborated by the fact that, when defendant went out on maternity leave, the credit agent that took over her accounts noticed a delinquency within one or two days, leading to an investigation that quickly revealed the full extent of the problem. The trial court was entitled to rely on this evidence in setting the amount of restitution. And having credited that evidence, the trial court was required to award full restitution unless clear and compelling reasons dictated otherwise.

Defendant argues that the restitution award conflicts with the rehabilitative purposes of probation. She argues that, with interest tacking on, she would have to pay $500 per month just to get ahead, and that with the conviction limiting her ability to get a job, it is unlikely she will be able to pay the amount back, particularly since she has four young children.

The fact of the matter, however, is that defendant took $58,273.02. That she would have difficulty paying it back is not a sufficient reason to depart from the constitutional mandate of full victim restitution. We review the court's judgment for abuse of discretion. No such abuse has been shown.

16

DISPOSITION

Defendant's conviction under count 2 for grand theft is stricken. In all other respects, the judgment is affirmed.

IKOLA, J.

WE CONCUR:

FYBEL, ACTING P. J.

THOMPSON, J.

17