Filed 2/26/26  P. v. Adams CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083526 |
| v. | (Super.Ct.No. RIF2300848) |
| CHRISTOPHER LARRY ADAMS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Brian E. Hill, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Evan Stele, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Christopher Larry Adams was sentenced to seven years in prison after a jury found him guilty of making a felony criminal threat in violation of Penal Code section 422. (Unlabeled statutory references are to the Penal Code.) On appeal, Adams argues that the trial court abused its discretion by declining to reduce the felony to a misdemeanor. We conclude that Adams forfeited the argument by failing to raise it at the sentencing hearing, and the argument also fails on the merits. We therefore affirm.

BACKGROUND

The victim, M.R., is the 83-year-old grandmother of Adams's wife, Leandra. In December 2022, M.R. invited Adams to stay in her home until "after New Year's" so that he could be with his children during the holidays. M.R. weighed 109 pounds, and she was five feet four inches tall.

New Year's Day came and went, and M.R. "[c]ontinuously" asked Adams to leave. In mid-February 2023, when M.R. was picking up her grandson and great-granddaughter from school, she received a call from her roommate, who told her that Adams and Leandra were having a "verbal confrontation." M.R. rushed home with the children and said to Adams, "'[y]ou perverted mother fucker. Get the fuck out of my house.'" Adams responded, "'[b]itch, I'll knock your mother-fucking head off your shoulders.'" M.R. felt threatened, and she walked away, got into her car, and called 911. Adams's daughter subsequently told M.R. that Adams was "'sitting in the living room with a butcher's knife.'"

After about 30 minutes, the police arrived. Adams initially would not come out of the house. "Between 40 [minutes] to an hour" later, Adams exited the home, and he was arrested for making a criminal threat.

At the preliminary hearing, defense counsel requested that the court reduce the criminal threat count to a misdemeanor pursuant to subdivision (b) of section 17. The court denied the request.

The People filed an information charging Adams with one felony count of making a criminal threat in violation of section 422. The People further alleged that he personally used a deadly or dangerous weapon in the commission of the offense (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23)), had previously been convicted of two prior serious felonies (§ 667, subd. (a)), and had two prior strike convictions (§§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(A)). The People also alleged the following six aggravating factors: (1) Adams's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory; (2) he was on probation, mandatory supervision, postrelease community supervision, or parole when he committed the current offense; (3) he had served prior terms in prison or county jail pursuant to subdivision (h) of section 1170; (4) his prior convictions were numerous and increasingly serious; (5) he engaged in violent conduct, indicating that he is a serious danger to society; and (6) the victim was particularly vulnerable. (Cal. Rules of Court, rule 4.421(a)(3) & (b)(1)-(b)(5).)

Following a five-day trial, a jury convicted Adams of making a criminal threat. The jury further found that he made the threat to a vulnerable victim. The court found that Adams had two prior serious felony convictions and that he had two prior strike convictions, and it found the remaining aggravating factor allegations true.

On the date originally scheduled for sentencing, the probation department had not yet filed a probation report. The court stated that without a probation report it was "difficult to know what's appropriate in terms of the sentence." The court asked the People for their recommended sentence, and they responded that they "would be requesting 25 to life." The court observed that such a sentence could be "draconian," adding that it was difficult "to make a reasoned, an informed decision regarding whether [granting Adams's motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 was] appropriate without having a probation report." Over Adams's personal objection, the court continued the sentencing hearing to the following month.

The court and defense counsel then engaged in the following colloquy:

"THE COURT: Let me get your thoughts about whether it's going to be helpful for you to proceed with the probation report being prepared.

"[DEFENSE COUNSEL]: Under the circumstances I would say yes, your Honor.

"THE COURT: Okay.

"[DEFENSE COUNSEL]: I think it's important but I won't go against my client's wishes.

4

"THE COURT: Well, your client has his own views but you want to be competent in your representation of your client, and I can't identify any possible prejudice in the case to your client. It's going to be a prison case I think there's no question about it. It's just what really is the issue is the length of the prison sentence. Not likely to be probation, he's got two prior strikes. Looking at 25 to life.

"Just based on my recollection of the case and his history that seems high but to really make a fully informed decision I need a probation report.

"[DEFENSE COUNSEL]: Understood.

"THE COURT: But it's not a probation case so he's not going to be released. He would never, not in any circumstances, be released between now and March the 22nd."

At the sentencing hearing the following month, the court discussed the probation report's sentencing recommendation of "13 years in state prison," consisting of the upper term of three years for the criminal threat conviction plus five years for each of Adams's two prior serious felony convictions. The court stated, "I think state prison is mandatory, given the nature of the charge and [Adams's] criminal history." The People submitted on the probation report's recommendation, and the court stated that it was inclined to follow the recommendation and "strike the two strikes that were found to be true by the Court."

The court then addressed Adams's criminal history: "So you have [a] significant concession, it seems to me, from the prosecution that they agree that maybe, given the nature of the offense, 25 to life is not warranted.

5

"Here's your problem, though, Mr. Adams, before I hear from [defense counsel], your problem is your criminal history. It's not so much the nature of this offense. If it was this offense in isolation, and you didn't have any prior criminal history, you would be put on probation for this offense, there's no question, even if convicted by a jury.

"That's not the issue. The issue is that you present to the Court as someone who is angry, who is not compliant, who is not d[e]fferential to people, whether it's—at least in my prior interactions with you and observing you in court—not respectful to the Court. You, obviously, weren't respectful to an 82-year-old grandmother. That issue could have been handled in a much different way. I'm sure you would acknowledge that if you were pressed to acknowledge it.

"But your problem, again, is a criminal history going back to 2009, where you have—I'll just repeat it. In 2009, it was a misdemeanor. In 2011, it was first-degree residential burglary. There were two counts. I think, you were convicted of one. I didn't quite understand that, because I only got, I think, a narrative about one of the counts. But, in any event, it was with a person present, and it was first-degree residential burglary. And in 2012, a second conviction of first-degree residential burglary. It could have been 2011 as well. And then, subsequent to that, you have a crime of violence in 2017, which involves battering of an intimate partner or spouse or girlfriend, and you received four years in state prison. And then, you're not far removed from state prison where you're alleged to have committed an act of child endangerment or battery, you do a

full year in county jail, then, in 2021, you commit a vandalism. In 2022, you commit another misdemeanor offense.

"So you've got a pattern of criminal history that makes it hard for this Court to conclude that you're not a danger to other people; that you're going to be complying with court orders; that you're going to follow the law. Maybe it's—I don't know how else to read your criminal history, other than you present a danger if you are released, and that you're angry, for whatever reason. And maybe there are reasons, maybe you had a difficult childhood, but that doesn't really excuse this behavior, nor does it present any assurance that you're not going to go out and continue to be angry because of your childhood or external factors.

"In other words, if we release you, we don't want to just have this be a continuing process of you're back in court again in two years or three years or four years. Somehow you're not getting the message, and that message has been sent to you repeatedly over the years. . . .

"I mean, you look at this criminal history, and I don't know how you conclude anything other than you present a danger. Hopefully, some day, you're going to decide if you're going to make a promise to yourself and a commitment to yourself, I'm not going to do this anymore. Whatever it takes, I'm not going to drink alcohol. I'm not going to use drugs. I'm going to change my behavior."

After hearing from Adams's family, the court stated that "[t]he law is pretty clear in terms of what punishment he's going to receive. It's not going to be anywhere near the

7

maximum that he's going to receive, but it's going to be significant[ly] less, but the law is pretty clear that he's got to be punished." Defense counsel asked the court for a "more lenient sentence" "given the totality of the circumstances."

The court noted that it had "listened to the evidence, and given the nature of the crime, and given the family's support, the recommendation is 13. I'm going to reduce it to seven." The sentence consisted of the middle term of two years for the criminal threat plus five years for one of the prior serious felony convictions. The court exercised its discretion under section 1385 and dismissed Adams's other prior serious felony conviction and both of his prior strike convictions, and the court struck the deadly weapon enhancement.

## DISCUSSION

Adams argues that the trial court abused its discretion by failing to reduce his felony criminal threat conviction to a misdemeanor pursuant to subdivision (b) of section 17. The People argue that Adams forfeited the argument because he did not ask the court to reduce his conviction to a misdemeanor at sentencing. We agree with the People.

A "'wobbler'" is "an offense which may be charged and punished as either a felony or a misdemeanor . . . ." (*Davis v. Municipal Court* (1988) 46 Cal.3d 64, 70.) Making a criminal threat in violation of section 422 is a wobbler offense. (*People v. Queen* (2006) 141 Cal.App.4th 838, 842.) "When a fact finder has found the defendant guilty of . . . a wobbler that was not charged as a misdemeanor, the procedures set forth in section 17, subdivision (b) . . . govern the court's exercise of discretion to classify the

8

crime as a misdemeanor." (*People v. Park* (2013) 56 Cal.4th 782, 790.) However, "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) Adams therefore forfeited his claim by failing to raise the issue at sentencing.

Even if Adams had not forfeited the argument, we would reject it. Adams argues that the court abused its discretion because it "did not appear to be aware of its discretion to consider the offense a misdemeanor and sentence [Adams] to county jail." We agree with the People that any such error was harmless. If the trial court had believed that Adams deserved a shorter sentence but mistakenly believed that it lacked discretion to reduce the offense to a misdemeanor, then the court could have sentenced him to as little as 16 months in prison by dismissing the other serious felony conviction and imposing the low term. (§§ 422, 1170, subd. (h)(1).) Instead, the court sentenced Adams to seven years, consisting of the midterm of two years plus five years for the prior serious felony conviction. Thus, even if we assume for the sake of argument that the court did not realize that it had discretion to reduce the criminal threats conviction to a misdemeanor, there is no reasonable probability that Adams would have obtained a more favorable sentence if the court had been aware of its discretion. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Insofar as Adams argues that the trial court abused its discretion by imposing a seven-year sentence instead of sentencing the offense as a misdemeanor, we are not

persuaded. (*People v. Lee* (2017) 16 Cal.App.5th 861, 866 [decision not to treat a wobbler as a misdemeanor is reviewed for abuse of discretion].) "To prove an abuse of discretion, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.""" (*Ibid*.)

The court made a reasoned, individualized determination in light of relevant considerations such as Adams's criminal history and the danger that he poses to the public. The court recognized that had Adams's criminal threat occurred "in isolation, and [he] didn't have any prior criminal history, [he] would be put on probation for this offense, there's no question, even if convicted by a jury." But the court concluded that in light of all of the relevant circumstances, seven years in state prison was an appropriate sentence, although a longer determinate sentence or even an indeterminate sentence of 25 years to life would be legally authorized. The court's decision not to impose a sentence shorter than seven years was not arbitrary, capricious, or otherwise irrational.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

RAMIREZ

P. J.

FIELDS

J.